Good morning, Your Honors. My name is Sandra Ronald, and I represent the petitioner, Ms. Sabla-Kebede, in this matter. May it please the Court, the issue presented in this case is whether or not the adverse credibility finding by the immigration judge is supported by substantial evidence. We submit that substantial evidence compels a reasonable fact finder to reverse the adverse credibility finding made by the immigration judge. Although Ms. Kebede's credibility was called into question by the discrepancy between her original asylum application and her testimony, she provided a reasonable and plausible explanation for the omission. The omission was that she didn't mention the rape that occurred in September of 1988. She also provided a corroborating evidence in the form of a psychologist's report from Anna Deutsch, which corroborated that she suffered from symptoms of rape syndrome and recited the facts consistent with the testimony of Ms. Kebede and Ms. Kebede's mother, who is actually her biological grandmother. She also presented her mother's testimony. The mother's testimony was consistent and detailed with regard to the rape incident. However, with regard to the brother Bahanu's whereabouts, there is an inconsistency. For supporting documents, she submitted documents that this Court has referred to in Lopez-Galarza about the long-term effects of rape, isolation, and unwillingness of a victim of a traumatic rape to discuss this, even after a substantial period of time. And she also presented her own credible and consistent, detailed testimony. She stated that she felt shame that she didn't know that this was something that she could talk about, that this was a secret to herself. Counsel is familiar with Rule 28J, that in order to bring forth something new, a letter should be given to opposing counsel. However, this Court just published a case yesterday, March 31st, 2004, Taha v. Ashcroft. And if the Court pleases, I would be willing to also, you know, brief this. But I believe that this, that case should be distinguished from the current case. In that case, a Sudanese man presented his asylum case where he discussed in his asylum application various incidents of detention. However, in his testimony, the BIA seemed to believe that he had embellished or added on facts in his case and had not offered a reasonable explanation as to why there was a discrepancy in his testimony. But looking at the facts of Taha, the difference in this case is that we have the mother's testimony and we have the articles. Also, our psychological report that we presented goes straight to the heart of the issues of rape and the rape syndrome that Ms. Cabetta suffered from. In the case of Taha, the doctor's letter that was submitted, and I don't have the certified record, administrative record on appeal, but from the decision and from the dissent, what I can discern from the facts is that a doctor's letter was submitted and it discussed scars. But one area that it didn't seem to discuss was a major aspect of concern to the Court, and the credibility issue was like the injuries to the Mr. Taha's bowel and the surgery that he required subsequently wasn't addressed in the doctor's issue. And also, the BIA was held to have reasonably reviewed that matter because it held that he was offered an opportunity to explain the omission, and he hadn't done so, except for a conclusory statement of cultural differences. And that clearly differs here. We have the mother's testimony articles, a psychologist's report going directly to the point. Petitioner also argues that the immigration judge's decision was flawed. It was not supported by substantial evidence in other areas. First is to the conjecture that if the rape had actually occurred, Ms. Cabetta would have spoken about it earlier in her first asylum application or to the asylum officer when she appeared before them. Substantial conjecture cannot be a substitute for substantial evidence. The documentation presented and the testimony show that Ms. Cabetta suffered severely after this rape, and she was very uncomfortable speaking about this, even with her mother who pleaded with her several times. It's in the administrative record she didn't talk about this rape. The documents submitted about the issues of rape clearly indicate that one of the studies where 35 individuals were followed, and they themselves didn't talk about, 12 of the individuals didn't talk about the rape with anybody, even a substantial period of time afterwards. Ms. Cabetta arrived in the United States and filed her asylum application within 25 days of her arrival. The conjecture that she would have stated this to the asylum officer was improper because there was no evidence on the record what was stated to the asylum officer before the interview, neither the testimony or the asylum officer's assessments. Second, the immigration judge stated that the client spoke English well. She was educated and she was articulate. Again, this has no bearing on whether or not she would have discussed the rape issue in her original application. It goes contrary to the mother's testimony. The next issue is the issue of whether or not she regained consciousness, whether it was in the taxi on the way to the hospital after she was raped by the two DERG officials or whether it was in the hospital, as her mother stated. This is an insignificant matter that doesn't go to the heart of her asylum claim. The issues presented here is that she was brutally raped by two DERG officials. Her family had been targeted by DERG officials over the course of many, many years, and unfortunately this event happened to Ms. Cabeda. The other issue is the location of Berhanu, the brother. The mother's testimony is very difficult to understand in this particular area. It seems that she has a hard time understanding the dates and even where her son was, even where she was in relationship to the incident when they were talking about how often she had spoken. And then the other issue that is not supported by substantial evidence is why the DERG suddenly would go after Ms. Cabeda. I think that's just a mischaracterization by the immigration judge of the facts in this case. The facts presented establish that Ms. Cabeda's family had been visited over a number of years by the DERG officials because they were high-ranking family members under the Haile Selassie regime. And this was not the DERG suddenly going after Ms. Cabeda. This was the DERG going to Ms. Cabeda's home while her mother and her brother were out and the two officers raped her while she was home alone. The judge failed to explain why she discounted the testimony of the mother. She found the mother credible as to the mother's most confusing part of the testimony, the location of the brother and the dates of the brother, where he was. But she did not give any weight whatsoever to the mom's testimony about the rape incident, which was consistent with the exception of the consciousness issue with Sebla's testimony and with the psychologist's report. Also, the immigration judge failed to discuss at all the psychologist's report or any of the supporting documents. So for these reasons, she's eligible for asylum as a victim of assassination. So the claim that she should be granted is a matter of discretion. I reserve the last minute for rebuttal. Thank you. Good morning. May it please the Court. Jan Redfern for the respondent. John Ashcroft. Your Honors, as you know, the petition in this case requested asylum in the holding of deportation based on claims that she was persecuted in Ethiopia because she belonged to a wealthy family during the reign of the former Emperor Haile Selassie. She testified that certain family members were killed during the revolution in 1974 when that government was overthrown. Among other claims, she also testified that in 1988, two soldiers from the Derg regime searched her house and raped her. The immigration judge in this case denied the petitioner asylum and withholding of deportation based on two things, first, a finding of adverse credibility and an alternative finding that even assuming the petitioner testified credibly, that she failed to establish eligibility for asylum and withholding of deportation. Substantial evidence of record in this case supports the immigration judge's determination that the petitioner failed to establish eligibility for asylum and withholding with sufficient credible evidence. First of all, the immigration judge found that the petitioner lacked credibility based on two important factors. First, there were several inconsistencies in her testimony and contradictions between her testimony and her asylum application. And secondly, based on the immigration judge's own observation of the petitioner's demeanor, she found that the petitioner lacked credibility. Now central to the ---- How much experience has this immigration judge had with women talking about rape in court? Your Honor, I can't answer that question. I've had a lot, about 49 years' experience in State and Federal courts, and I've never seen a rape victim that wanted to talk about it or could tell a very coherent story even sometimes because of the feeling that they didn't want to disclose everything about it. Now this looked to me like a case where the immigration judge decided he didn't want to find the witness credible and then contrived a whole list of little picky things that were wrong with her story and ended up saying she's not credible. But she sounded pretty credible to me in connection with the ---- what happened to her and those two soldiers. Your Honor, respectfully, I would disagree with the characterization that the immigration judge decided to pick apart the petitioner's testimony and find her not credible. Well, that's in the record. I mean, you can draw your own conclusions. Yes, Your Honor. And this ---- respectfully, the Court's not entitled to reweigh the evidence merely because it would have decided the issue differently. Rather, the Court determines whether there is only one result in this case, that the petitioner was credible. Well, can we challenge that finding? Actually, Your Honor, if the Court's review is whether the immigration judge's adverse credibility determination is supported by substantial evidence. No, we can look beyond that. I was going to say, Ms. Redford, in doing that, don't we look to the specific articulated reasons that the immigration judge gave? Yes, Your Honor. Can't we look at whether or not he or she drew reasonable inferences? Yes, Your Honor. And in viewing them. To be consistent or inconsistent. Yes, Your Honor. And in viewing the evidence, the Court reviews it in the light most favorable to the immigration judge's adverse credibility determination. But after doing that, if we are satisfied that the result is compelled the other way, our case law says we have the right, in essence, to reject the credibility, the adverse credibility. Absolutely, Your Honor. And I don't dispute that. I'm just saying that the evidence for the Court to reverse that finding, the evidence must compel the result that she's not credible. But the inconsistencies, they have to go to the heart of the matter, too. That's correct, Your Honor. And it's important, I'd like to point out, going back to your question, Your Honor, that she stated that she was ashamed to talk about the rape. And I believe the immigration judge in this case, her name was Jan, was a female immigration judge. I don't know how much experience she had with rape victims. But it's important to note that not only did the Petitioner not talk about the rape, she didn't talk about any of the incidents that allegedly occurred during the rape. She didn't talk about the fact that the soldiers came to the house numerous times after they moved in 1979. To the contrary, in her asylum application, she stated that they moved to a different community so that no one knew who they were. And now, all of a sudden, she gets... Is the government taking the position that the rape never occurred? Because I didn't see an adverse credibility finding with regard to the grandmother's testimony, which certainly corroborates that she came home and found what any reasonable person would conclude would be pretty clear evidence of a brutal assault on the Petitioner. Your Honor, there was no credibility determination made with respect to the grandmother except for the fact that she did corroborate some of those claims. Some of the other inconsistencies, though, that were particularly disturbing to this immigration judge with respect to her testimony was the fact that there were inconsistencies regarding the consciousness of the Petitioner, whether she regained consciousness in the taxi or on the way to the hospital. Well, you know, that is so picky, really. You know, I've been in that state myself. You know, you wake up, and you don't... It isn't like the light comes on and stays on. I mean, I never... I thought that was really kind of silly myself. Well, Your Honor, the difference here is that it's not that the Petitioner put the rape incident in her asylum application and then testified differently in some of these, as you would say, insignificant details. She didn't include it at all. And then when she testified about it, some of the details were significantly different than that testified that her grandmother testified about. One of the more — this isn't the only concern of the immigration judge, and I'd like to point out that there are significant omissions and discrepancies in the record that the immigration judge didn't point to. There were numerous things, such as the Petitioner didn't state that her uncles were killed, that her two uncles were killed in her asylum application. She didn't state that there were any other imprisonments other than the one imprisonment of her mother and her brother for a week and a month, respectively, in 1978. She didn't testify... But didn't the mother also testify? And the mother was granted asylum. Can't we accept the testimony of the mother? Because those brothers who were killed, as I understand it, were her relatives as well. Well, Your Honor, there is no — there's nothing in the record to indicate why the grandmother got asylum, what evidence she put forward in her asylum application. It could have been a completely different matter. Okay. Well, let's forget about asylum for a second, but let's just go back. I mean, she did testify that she had relatives that were killed. Doesn't that corroborate the story that the Petitioner offered? Well, it corroborates what she put in her asylum application, that her granduncle and her grandstepfather were killed 14 years prior to the alleged rape under a regime, and the granduncle and the grandstepfather were — had prominent positions in the government during this period. Well, she was only about 4 years old then. Well, how old is she? I believe she was 3 years old. Yes, Your Honor. She was 3 years old. Yes, Your Honor. Even assuming, though, Your Honor, that the Court doesn't find that the adverse credibility determination is supported by substantial evidence, the immigration judge did make an alternative finding on the merits of the asylum application. The immigration judge concluded that, assuming that Petitioner testified credibly that she nonetheless failed to establish her asylum eligibility, that she failed to establish past persecution or well-founded future persecution in Ethiopia. But doesn't that depend upon a rejection of the rape story? Because if she's credible on that, wouldn't you concede that that rape would amount to past persecution? Absolutely not, Your Honor, because it has to be on account of one of the five enumerated grounds in the INA. So — but she's got the statement in the record attributed to one of the soldiers who raped her. I forget the exact language, but sort of this — it was to the effect of this is payback. You know, your family were in power before, and now this is what you get or something like that. She did testify that that's the — there was one statement by the soldier to that effect, that basically she was getting what she deserved because of her family's status. But simply the existence — If that statement is believed, though, doesn't that give us the nexus to conclude that it's linked to one of the five factors? Respectfully, Your Honor, no, it doesn't, because — merely because the soldiers acknowledged that there was some family status or maybe some imputed political opinion doesn't compel the conclusion that she was raped on account of that status or political opinion. Well, that's what they told her, you know. And, you know, I just think from what we know about life that things like that happen. You know, when somebody gets raped, you know, they're sort of being punished and humiliated. That's what it's about. But it doesn't mean that — And there's this woman, you know, who grew up in this family. And they're just — they're just after her. I mean, that seems very plausible to me. But, Your Honor, it's important to keep in mind that it's 14 years after her grand — a generation of family once removed. Her granduncle and her grandstepfather were allegedly — Yeah, but the kids know these things, you know. They grow up with these ideas. This is not a blank in their minds. Respectfully, Your Honor, the government submits that it was not a rape, if it occurred, that was perpetuated on account of one of the statutorily protected grounds in the INA. In conclusion, the immigration judge's denial of asylum and withholding of a deportation is supported by substantial evidence. And the Respondent respectfully requests that this Court affirm that decision. Are there no further questions? Okay. Thanks. Thank you, counsel. I'd like to address the on-account issue. The police officer did say you had your time under the prior regime, and this is what's coming to you, something to that effect. And it has been recognized that rape is a method of harming and punishing the individual and as well as the family. And this is a family that the DERG officials had been visiting their home, although less after 1979 when they moved, but had been visiting their home on a frequent basis to make sure that they were not political opponents. As to the immigration judges that she had — Well, some of those societies, you know, this happens to a woman. You know, they take her out and stone her. You know, it's her fault. It's what they do. And I think that that's what Ms. Gabetta felt in this case to a certain extent when she said that she felt shame. And she also said, I wish I had run faster. I wish I hadn't let them in, but I had no choice. And that's one of the reasons that she didn't bring this up, because it was definitely going to stigmatize her. Even in the United States, we don't publish the names of rape victims because we realize that it stigmatizes them. My time is up. And thank you very much. Thank you. All right, if you can't submit it, you want to take a break, too.
judges: Goodwin, Pregerson, Tallman